

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 12, 2019

**BY ECF**

The Honorable Ronnie Abrams
United States District Judge
United States District Court for the
Southern District of New York
40 Foley Square
New York, New York 10007

> Re: *United States v. Nasim Rakhamimov*,
> 18 Cr. 72 (RA)

Dear Judge Abrams:

The Government respectfully submits this letter in advance of the sentencing of defendant Nasim Rakhamimov, currently scheduled for February 19, 2019. The defendant pled guilty to conspiring to commit wire fraud, in violation of Title 18, United States Code, Section 371, for his role in a scheme to profit from falsely inflated recyclable container redemptions. For the reasons set forth below, the Government believes that a sentence within the stipulated Guidelines sentencing range of 33 to 41 months' imprisonment is reasonable and appropriate in this case.

## Background

### *The Recyclable Container Act*

New York State's Returnable Container Act (the "RCA"), codified at New York Environmental Conservation Law, Article 27, Title 10, was initially enacted in or about 1983 as a legislative response to litter, environmental damage, and related budgetary burdens associated with the production and disposal of beverage containers, i.e., bottles and cans. Since its initial enactment, the RCA has been amended at various times, including in 2009 and 2013, and currently includes a regulatory scheme designed to promote the recycling of bottles and cans by bottlers, beverage distributors, and container redemption centers. *See generally* Presentence Investigation Report dated December 10, 2018, ECF Doc. 77, ("PSR") at ¶ 12.

Under the regulatory scheme established pursuant to the RCA, certain companies referred to as "deposit initiators" must collect a $.05 deposit on every container for certain specified beverages, including soft drinks, beer, and bottled water, sold in New York State. Deposit

The Hon. Ronnie Abrams, p. 2
February 12, 2019

initiators are the first bottler, distributor, or dealer to collect the required deposits on beverage containers. Deposit initiators must, among other things, register as a deposit initiator with the State, establish a refund value account, track all deposits collected, and file quarterly reports with DTF.

"Refund value accounts" are bank accounts established by deposit initiators for the purpose of holding the deposits paid by consumers. The accounts are used to reimburse customers (or other companies, as described in more detail below) that redeem bottles to the deposit initiator for the purpose of recycling those bottles. At the end of each fiscal quarter, the deposit initiator must remit 80% of the balance of such refund value accounts (that is, the amount remaining in those accounts after the reimbursement of deposits to redeeming persons or entities) to the DTF; the remaining 20% of the quarterly balance may be withdrawn by the deposit initiator for its own use (subject to certain restrictions not relevant to this application).

In addition to the $.05 deposit that must be reimbursed to redeeming individuals or entities, deposit initiators must pay a handling fee of $.035 per empty beverage container redeemed by "redemption centers," which are defined as, inter alia, "any person offering to pay the refund value of an empty beverage container to a redeemer [that is, a person demanding the refund value in exchange for an empty beverage container]." 6 N.Y.C.R.R. § 367.2(r); *see also* 6 N.Y.C.R.R. § 367.6 ("A distributor must pay to each dealer or redemption center a handling fee of not less than 20 percent of the refund value of each empty beverage container accepted from such dealer or redemption center. This handling fee must be paid in addition to the refund value of each such empty beverage container.").

By 2017, the Federal Bureau of Investigation had learned that various corporate entities in New York were using the RCA's procedure to obtain illicit profits for themselves by falsely inflating the number of redeemed bottles reported to the State.

*The Bottle Scam*

Nasim Rakhamimov and his cousin, Eldar Rakhamimov, are executives of Elramida LLC, a Brooklyn, New York based bottle redemption center. PSR ¶ 14. Elramida LLC collects recyclable beverage containers for redemption to various deposit initiators, including two particular bottling companies, Pepsi and Canada Dry Bottling Companies, whose beverage containers are each returned to the same redemption facility, 5 Boro Green Services, LLC, located in Queens, New York ("Facility-1"). Elramida LLC pays members of the public $.05 for each empty beverage container returned to Elramida LLC, and subsequently compiles and delivers those empty containers to Pepsi and Canada Dry Bottling Companies, among other deposit initiators, in return for reimbursement of the $.05 refund initially paid by Elramida LLC, and a handling fee. PSR ¶¶ 15-17.

In order to defraud Pepsi and Canada Dry Bottling Companies, and similarly situated depositors, and ultimately the State, Nasim Rakhamimov, Eldar Rakhamimov, Joseph Finneran, together with Stephen Baptiste, a co-conspirator working at Facility-1, among others, falsely overstated the number of empty beverage containers delivered by Elramida LLC to Facility-1.

The Hon. Ronnie Abrams, p. 3
February 12, 2019

The false inflation of recycled containers resulted in an overpayment of bottle deposits and handling fees to Elramida LLC. Nasim Rakhamimov and Eldar Rakhamimov, in turn, paid a portion of their illicit gains to Baptiste in the form of a cash kickback. PSR ¶ 19.

Nasim Rakhamimov and his co-conspirators accomplished their fraud through false invoices. Elramida—typically through Nasim Rakhamimov—maintained ledgers and invoices reflecting estimates of the containers actually received by Elramida. After driving those containers to Facility-1, the bottles were off-loaded by Baptiste, among others. Baptiste then provided a separate invoice to the conspirators reflecting a falsely inflated number of containers. Typically, the degree of false inflation equated to approximately $1,000 per truckload in fraudulently inflated "redemptions" and handling fees to be paid to Elramida LLC by Pepsi and Canada Dry Bottling Companies. Of that $1,000, Nasim Rakhamimov would allocate approximately $700 to himself, Eldar Rakhamimov while $300 was allocated to Baptiste and the driver who delivered bottles to 5 Boro from Elramida.[1] PSR ¶¶ 21-23.

In addition to 5 Boro, the conspiracy operated at other locations. For example, one of the Elramida drivers who acted for a time as a confidential source ("CS-1") provided information that defendant Ruslan Kadirov engaged in the recycling scam by falsely inflating the reported number of empty containers delivered by Kadirov to another deposit initiator, Corona a/k/a Manhattan Beer. Bank records reveal that Corona has provided checks to various entities controlled by Baptiste. With respect to Corona, Kadirov explained that he delivered empty containers from Elramida LLC to Corona, where an employee of Corona falsely inflated the number of redeemed containers and also left a certain amount of containers on Kadirov's truck, while reporting that those containers were in fact redeemed, thereby permitting Kadirov and his co-conspirators to "redeem" the remaining containers on multiple occasions. PSR ¶ 39.

Based on various defendants' post-arrest statements, a wiretap, and Nasim Rakhamimov's ledgers, Nasim Rakhamimov is responsible for approximately $1.5 million in losses, as follows:

| **Entity** | **Losses** |
|---|---|
| New York State | 705,882.35 |
| Pepsi/Canada Dry | 158,823.53 |
| 5 Boro | 132,352.94 |
| Manhattan Beer/Corona | 502,941.18 |
| *Total* | *$1,500,00.00* |

*Procedural History*

Agents with the FBI arrested Nasim Rakhamimov on December 4, 2017, pursuant to criminal complaint 17 Mag. 8999 (the "Complaint"). The Complaint charged Nasim

---

[1] The Nasim Rakhamimov PSR incorrectly states that the $700 was shared between the Rakhamimovs and Baptiste. *See* PSR ¶ 22.

The Hon. Ronnie Abrams, p. 4
February 12, 2019

Rakhamimov, Eldar Rakhamimov, and others with conspiring to commit mail and wire fraud in violation of Title 18, United States Code, Section 1349.

On January 29, 2018, a grand jury returned an indictment charging Nasim Rakhamimov, Eldar Rakhamimov, Nasim Rakhamimov, Ruslan Kadirov, Stephen Baptiste, and Joseph Finneran with participating in a mail and wire fraud conspiracy. ECF Doc. 20.

On September 18, 2018, Nasim Rakhamimov pleaded guilty to a superseding information charging him with conspiring to commit wire fraud in violation of Title 18, United States Code, Section 371. *See* ECF Doc. 60 (S2 Information), Minute Entry dated September 18, 2018 (plea). Nasim Rakhamimov pled guilty pursuant to a plea agreement with the Government (the "Plea Agreement").

During the plea proceeding, Nasim Rakhamimov admitted that he and others "falsely inflate[d] the invoices of the number of bottles loaded on the trucks that we delivered to Pepsi company. As a result, that caused an overpay of what we were supposed to be paid." When the Court inquired about whether it "was [his] intention in inflating these invoices to get the overpayment," the defendant admitted that it was. ECF Doc. 69, Plea Tr. 18:18-19:04.

In the Plea Agreement, the parties stipulated that Guidelines sentencing range applicable to Nasim Rakhamimov was 33 to 41 months' imprisonment, based on an offense level of 20 and a criminal history category of I. The parties computed the offense level as follows: (a) a base offense level of 6, pursuant to U.S.S.G. § 2B1.1(a)(2), (b) an increase of 14 levels, because the losses exceeded $550,00, but were less than $1,500,000, pursuant to U.S.S.G. § 2B1.1(b)(H), (c) an increase of 3 levels, pursuant to U.S.S.G. § 3B1.1(b), because the defendant was an manager or supervisor (but not an organizer or leader) of criminal activity that involved five or more participants or was otherwise extensive, and (d) a decrease of 3 levels because of the defendant's timely acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.

Probation arrives at the same Guidelines sentencing range. *See* PSR ¶ 59-69 (calculating an offense level of 20); PSR ¶ 70-73 (calculating a criminal history score of 0).

Every other indicted defendant has also pleaded guilty. *See, e.g.*, ECF Minute Entry dated September 13, 2018 (Eldar Rakhamimov); ECF Minute Entry dated September 18, 2018 Joseph Finneran); ECF Minute Entry dated October 15, 2018 (Ruslan Kadirov). No defendant has yet been sentenced. As compared to his co-defendants, Nasim Rakhamimov is less culpable than Eldar Rakhamimov, the scheme's leader, but more culpable than the other participants.

## Discussion

### 1.   *Applicable Law*

The Guidelines still provide strong guidance to the Court in light of *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Although Booker held that the Guidelines are no longer mandatory, it held also that the Guidelines remain

in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range": that "should be the starting point and the initial benchmark." *Gall v. United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, see 18 U.S.C. § 3553(a)(2); "the kinds of sentences available," 18 U.S.C. § 3553(a)(3); the Guidelines range itself, see 18 U.S.C. § 3553(a)(4); any relevant policy statement by the Sentencing Commission, see 18 U.S.C. § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," 18 U.S.C. § 3553(a)(6); and "the need to provide restitution to any victims," *id*. § 3553(a)(7). In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)    to afford adequate deterrence to criminal conduct;
    (C)    to protect the public from further crimes of the defendant; and
    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita v. United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

    2.    *A Sentence Within The Stipulated Guidelines Range is Reasonable*

The Government respectfully submits that the parties' stipulated Guidelines sentencing range appropriately reflects Nasim Rakhamimov's contributions to the Bottle Scam and accounts for the seriousness of his criminal conduct, while promoting respect for the law, and providing just punishment. *See* 18 U.S.C. § 3553(a)(1), (2)(A). Such a sentence would furthermore be designed

The Hon. Ronnie Abrams, p. 6
February 12, 2019

to afford adequate deterrence. *See* 18 U.S.C. § 3553(a)(2)(B).

First, Nasim Rakhamimov caused serious losses—totaling $1,500,000—to the State and to innocent businesses, and did so for his own gain and for the gain of his co-conspirators. Rakhamimov's scheme was purposeful and persistent, and required a range of corrupt conduct from forged records to kickbacks. Such brazen, harmful conduct merits a significant punishment.

Second, a Guidelines sentence is warranted to address general deterrence. Although different in kind from many "white collar" offenses, Rakhamimov's offense bears the hallmarks of a white-collar crime in that it rested on, and was propelled by, deceit. The legislative history of 18 U.S.C. § 3553 demonstrates that "Congress viewed deterrence as 'particularly important in the area of white collar crime.'" *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (citing S. Rep. No. 98-225, at 76 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3259); *see also United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (deterrence of white-collar crime is "of central concern to Congress"). General deterrence is seen as an important sentencing factor in such cases because it is seen as effective. *Martin*, 455 F.3d at 1240 ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.") (quotation marks and citation omitted); *United States v. Edwards*, 595 F.3d 1004, 1021 (9th Cir. 2010) ("[B]ank fraud, unlike an assault in a tavern or even domestic abuse, tends to be a planned, deliberate crime, which allows plenty of time for reflection, calculation of the odds of success or failure, and the ultimate decision."). The nature of Rakhamimov's scheme rendered it more difficult to uncover—and his role more difficult to identify—since it was accomplished involved multiple layers of co-conspirators acting in an closely-knit and under-regulated industry. The Court should impose a sentence that deters others from following his example.

\* \* \*

The Hon. Ronnie Abrams, p. 7
February 12, 2019

      For all these reasons, the Government respectfully submits that a term of incarceration within the parties' stipulated Guidelines range of 33 to 41 months' imprisonment is appropriate in this case.

                                                    Respectfully submitted,

                                                   GEOFFREY S. BERMAN
                                                 United States Attorney

                          By:     _____
                                 Andrew C. Adams/Andrew Thomas
                                 Assistant United States Attorneys
                                 (212) 637-2340/-2106

cc:     Kafahni Nkrumah, Esq. (by ECF)